INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al.

v.

Raymond J. DONOVAN, Secretary of the United States Department of Labor, Appellant.

No. 83–2026.

United States Court of Appeals, District of Columbia Circuit.

Argued April 18, 1984.

Decided Oct. 23, 1984.

J. Skelly Wright, Circuit Judge, dissented with opinion.

William G. Cole, Atty., Dept. of Justice, Washington, D.C., of the Bar of the Supreme Court of Tennessee pro hac vice, by

special leave of the Court, with whom Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty. and Michael F. Hertz, Atty. Dept. of Justice, Washington, D.C., were on the brief, for appellant.

Stephen P. Berzon, San Francisco, Cal., with whom Jordan Rossen, Leonard Page, Detroit, Mich., George C. Harris, Michael Rubin, San Francisco, Cal., Wendy Kahn, Washington, D.C., were on the brief, for appellees.

Before WRIGHT and SCALIA, Circuit Judges, and CLEMENT F. HAYNSWORTH, Jr.,* Senior Circuit Judge for the Fourth Circuit.

Opinion for the Court filed by Senior Circuit Judge HAYNSWORTH.

Dissenting statement filed by Circuit Judge J. SKELLY WRIGHT.

HAYNSWORTH, Senior Circuit Judge:

Eleven individuals and United Automobile Workers, purporting to represent many of its unnamed members, filed this action in the United States District Court for the District of Columbia against the Secretary of Labor, the only defendant. Plaintiffs claim that they had been wrongly denied benefits under the Trade Act of 1974, 19 U.S.C.A. §§ 2101, et seq., by "cooperating state agencies." In deciding to deny benefits to the named plaintiffs and other members of the Union, the state agencies allegedly relied upon an interpretative handbook issued by the Department of Labor in 1975.

Although the complaint sought no class relief under Rule 23 of the Federal Rules of Civil Procedure and no class was ever certified, the district judge rendered a declaratory judgment stating the handbook misinterpreted the Trade Act and ordered the Secretary of Labor to "direct" all state agencies to reprocess the claims of all workers denied benefits in reliance upon the handbook's asserted misinterpretation.

*International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, et al. v. Donovan,* 568 F.Supp. 1047.

We conclude that the district court erred in granting that relief, because the action was brought without joining, and without the possibility of joining, parties required to be joined by the Trade Act.

## I.

### A.

The Trade Act of 1974, 19 U.S.C.A. §§ 2101, et seq., is a comprehensive statute affecting American participation in world trade. It contains provisions for the assistance of workers whose jobs have been eliminated because of increasing competition from imported goods. If the Secretary of Labor certifies that a significant number of employees of a designated firm has been released because of increasing competition from imported goods, see 19 U.S.C.A. §§ 2272–73, a terminated former employee of that firm may seek several kinds of "adjustment assistance." These include a job search allowance, 19 U.S.C.A. § 2297, a relocation allowance, 19 U.S.C.A. § 2298, job training, 19 U.S.C.A. § 2296 and a "trade readjustment allowance," 19 U.S. C.A. §§ 2291–94.

This program of assistance for displaced workers is administered by those state agencies that handle the administrative processing of state unemployment claims. The Secretary of Labor has entered into agreements with all those "cooperating state agencies" under which the state agencies determine entitlements to "adjustment assistance" under the Trade Act, 19 U.S.C.A. § 2311. The United States fully finances the program, however. It reimburses the state for funds expended in providing such adjustment assistance and for the state's administrative expenses, 19 U.S.C.A. § 2313.

Of substantial importance in this case is the provision for judicial review of the ad-

*Sitting by designation pursuant to 28 U.S.C. § 294(d).

ministrative determinations of the state agencies. 19 U.S.C.A. § 2311(d) provides that such judicial review shall be "in the same manner and to the same extent as determinations under the applicable state law and only in that manner and to that extent."

### B.

Under 19 U.S.C.A. § 2291(2) a terminated employee of a certified firm is entitled to a trade readjustment allowance (TRA) only if he had "in the 52 weeks immediately preceding [his] total or partial separation, at least 26 weeks of employment [at the adversely affected firm] at wages of $30 or more a week." Nine of the 11 named plaintiffs contend that weeks of compensated leave, including weeks in which they were receiving workmen's compensation for disabilities, counted as weeks of employment within the 26-week requirement. Under the Secretary's guideline, only weeks of actual service are counted.[1] The other two named plaintiffs would qualify for benefits only if weeks spent in military service were excluded from the computation of the 52-week period. The 1975 handbook of the Department of Labor makes it clear that "the 52 weeks immediately preceding" separation are the 52 calendar weeks preceding separation.

Seven of the named plaintiffs sought trade readjustment allowances in California; three others sought them in Michigan, while one sought such benefits in Delaware. Initially, all were denied the benefits, but in administrative review proceedings several of those obtained an administrative award of the allowance. In those instances, however, the state agencies took an appeal to an appropriate state court where decision is being held in abeyance pending the outcome of this litigation.

It is alleged that an estimated 73,000 have been denied trade readjustment allow-ances for the same reasons and on the same basis as the named plaintiffs. The district court's order requires the Secretary of Labor to "direct" the state agencies to identify and review all such cases, to notify the claimants in such cases that they might be entitled to benefits and to reprocess those cases. There was no exception for the cases that are no longer subject to review under applicable state law.

In the reprocessing of the estimated 73,000 claims the state agencies presumably were to apply the statute as construed by the district judge. Under that construction all weeks of compensated leave were to be included in the computation of the 26-week period, as were weeks in which the former employee received back pay or fringe benefits of as much as $30 a week. All weeks of military service were to be excluded from the computation of the 52-week period.

### II.

■ It is first suggested that all of the prerequisites of class certification under F.R.Civ.P. 23 are present and that post-judgment class certification of the 73,000 disappointed claimants is appropriate. That, however, is impermissible. The rule requires action on the question of class certification in an early stage in the proceedings. When a class is certified there must be written notice to each of the members of the class in which the member is informed that he will be bound by the judgment, whether favorable or unfavorable, unless he affirmatively takes himself out of the action. When the rule existed in a more lenient form, it was thought unfair to permit late joinder after a favorable judgment, when an unfavorable judgment would not have been binding upon one who now wishes to embrace the benefits of the judgment. *See American Pipe & Constr.*

---

1. The Trade Act was amended in 1981. As amended, 19 U.S.C.A. § 2291(a)(2) states that up to three weeks of compensated leave or military service for training may be counted toward the 26-week requirement while up to seven weeks of absence because of a disability compensable un-der workmen's compensation laws may be counted to meet that requirement. All of the plaintiffs' claims, however, accrued before October 1, 1981, the effective date of the amendment.

*Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

■ The United Automobile Workers is not an appropriate representative of those TRA claimants who were not its members. It contends, however, that it adequately represented the interests of its own members and that those members would have been bound by an unfavorable decision on the merits. *See Bolden v. Pennsylvania State Police,* 578 F.2d 912, 918 (3d Cir. 1978). This contention is unpersuasive, for the Union has no standing to represent its members in this case.

■ The Union undoubtedly has standing in its own right to seek judicial relief for an injury to itself. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Moreover, in attempting to secure relief from injury to itself, an association may assert the rights of its members, particularly when the associational rights of its members are implicated. *NAACP v. Alabama,* 357 U.S. 449, 458–60, 78 S.Ct. 1163, 1169–70, 2 L.Ed.2d 1488 (1958); *NAACP v. Button,* 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963). In this case, however, the Union has alleged no injury to itself; nor are the members' associational rights affected. *See Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). It seeks standing solely because some of the claimants, but far from all, were members of the Automobile Workers Union. Many of the members of the Union, however, have not had their employment terminated because of increasing imports. They have no present interest in this case and no standing to seek any judicial relief. Those members of the Union who were disappointed claimants of the benefits have been injured, or denied advantages, in various amounts. The controversy could draw to a conclusion in these proceedings only if each individual claimant was a party plaintiff.

In *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), an association of firms engaged in the development and construction of residential housing in the Rochester, New York metropolitan area was one of the plaintiffs attacking the zoning ordinances and practices of a suburban town. It alleged that the zoning restrictions impeded the construction of low-cost residential housing with the consequence that some of its members had suffered loss of "substantial business opportunities and profits." It sought a declaratory judgment, injunctive relief and damages of $750,000.

The Supreme Court in *Warth* observed that in those cases in which an associational right to represent its members had been expressly recognized, the association had sought only prospective relief. The builders association was held to have lacked standing to represent its members in the action because it sought damages on their behalf. It was not alleged that all members of the association were injured, and it appeared that those who were injured suffered damages in varying degrees. Each injury was suffered by an individual member. Both the fact and extent of injury required individualized proof.

The plaintiffs here sought only declaratory and injunctive relief. The object, however, was to obtain judicial review of the thousands of old administrative claims. The relief requested was in no sense prospective, for all of these claims were fully accrued before October 1, 1981. Many of the Union's members had not suffered any injury at all, and those who had suffered an alleged injury had done so in varying amounts requiring individualized proof. No individual award may be made in these proceedings, forcing the district court to adopt a convoluted means of achieving the end—ordering the Secretary to "direct" the state agencies to reopen and redetermine the claims.

### III.

Five of the named plaintiffs have received administrative awards of benefits, but the other six have not. Those six have standing to assert a claim that they were denied benefits because of an improper construction of the statute. Nevertheless, we

think the complaint should be dismissed because it was filed without the joinder of necessary parties.

Section 239(d) of the Trade Act, 19 U.S.C.A. § 2311(d), provides:

> A determination by a cooperating State agency with respect to entitlement to program benefits ... is subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent.

The plaintiffs contend that § 239(d) is simply inapplicable to these proceedings. Observing that the Secretary is the only named defendant, they disavow any intention of obtaining any review in these proceedings of their adverse benefits determinations.

The disavowal is singularly unconvincing. The named plaintiffs sought and obtained a declaration that, assuming the truth of their allegations, they were denied benefits on the basis of a misinterpretation of the statute, and the Secretary was ordered to "direct" cooperating state agencies to reprocess the claims. The order does not expend itself directly upon the state agencies; it is only by indirection that the district court ordered them to reprocess the claims and to award benefits to these six named plaintiffs if their allegations of fact be true. The indirection by which that purpose was accomplished was a necessary consequence of the fact that the plaintiffs had not joined the state agencies. That, however, does not obscure the fact that the whole purpose of the litigation was to obtain a declaratory judgment that the state agencies had misinterpreted the statute and a mandatory injunction requiring the Secretary to direct the state agencies to mend their ways and award benefits to the plaintiffs. The six named plaintiffs both sought and obtained review of the administrative determinations that they were not entitled to benefits. The application of § 239(d) could not be avoided by the simple expedient of not joining the state agencies, but seeking to overcome their determinations through force to be exerted upon them by the Secretary under the court's command.

The Secretary contends that § 239(d) confines judicial review of state agency determinations to state courts. We need not determine so broad a question, however. The question would have been a very different one if the plaintiffs were seeking resolution of a federal question in an action to which the state agency was a party in a United States district court whose territorial jurisdiction overlapped that of the reviewing state court. *See Christian v. New York State Department of Labor*, 414 U.S. 614, 94 S.Ct. 747, 39 L.Ed.2d 38 (1974). If, however, a United States district court in those circumstances were authorized to address appropriately-raised federal questions, it surely would be required to observe the remaining requirements of § 239(d).

■ In California,[2] Michigan[3] and Delaware,[4] a court may not review an agency decision under the state's unemployment insurance law unless the agency is named as a defendant. The requirement of § 239(d) that review of determinations with respect to TRA benefits must be "in the same manner" as a determination under the state's unemployment insurance law requires similar joinder. Judicial review of a state agency's determination of benefits under its own unemployment insurance law may not be had without the presence of the state agency, since the state agencies are outside the district court's jurisdiction, it may not be had here.

*General Motors Corp. v. California Unempl. Ins. Appl. Bd.*, 253 Cal.App.3d 540, 61 Cal.Rptr. 483 (1967).

**2.** The California statute concerning judicial review of determinations by the California Unemployment Insurance Appeals Board, Cal.Un.Ins. Code § 410, simply authorizes standard judicial review of agency decisions. Such review requires the joinder of the state agency as a party-defendant. *See* Cal.Civ.Proc.Code § 1094.5;

**3.** Mich.Comp.Laws Ann. § 421.38(3).

**4.** Del.Code Ann. Tit. 19, § 3322 (1979).

A requirement of the presence of the state agency is both reasonable and desirable. The agency has already inquired into the circumstances and is best able to challenge erroneous factual assertions and to defend its determination. Effective review of the state agency action can only be had if the state agency is present. If present, the court's order may operate directly upon the agency, while the objective can be obtained here only by a very dubious order requiring the Secretary to "direct" the reprocessing of the claims by the state agencies.

Any direct control the Secretary of Labor may have over a state agency arises from an agreement between the two parties. Unless the state agency has agreed to reprocess cases at the direction of the Secretary, the Secretary would have no authority to issue such a direction. The district court's order, then, may be a futile thing except to the extent that voluntary compliance with the request of the Secretary may be expected.

Since we conclude that no relief could properly be awarded in this action, the judgment of the district court is reversed.

*Reversed.*

J. SKELLY WRIGHT, Circuit Judge, dissenting:

I dissent from this court's opinion and disposition of this case. I would affirm the judgment and orders issued by the District Court for the reasons stated in its opinion which is reported at 568 F.Supp. 1047 (D.D. C.1983).