DELAWARE VALLEY CITIZENS' COUNCIL FOR CLEAN AIR, et al., American Lung Association of Philadelphia, and Montgomery County, Delchester Lung Association, Sierra Club, Pennsylvania Chapter, Friends of the Earth of the Delaware Valley, Citizens' Committee For Environmental Control, Quinn, Kevin, Farrell, Kaysi, Weis, Ruth G., Klinkner, John, Biez, Elizabeth S., Shulman, Mona

v.

COMMONWEALTH OF PA., and Train, Russell E., Ind. and as Administrator of the Environmental Protection Agency, et al., Sherlock, William T., Individually and as Secretary of the Pa. Dept. of Transportation, Goddard, Maurice K., Individually and as Secretary of the Pa. Dept. of Environmental Resources, Snyder, Daniel, J., III, Individually and as Regional Administrator of the Environmental Protection Agency, Region III.

UNITED STATES of America

v.

COMMONWEALTH OF PENNSYLVANIA; The Pennsylvania Department of Transportation and William T. Sherlock, Secretary of The Pennsylvania Department of Transportation; the Pennsylvania Department of Environmental Resources and Maurice K. Goddard, Secretary of The Pennsylvania Department of Environmental Resources.

Appeal of Representatives Fred BELARDI, et al., and Senator Edward P. Zemprelli, et al., Applicants-Intervenors.

No. 81–2011.

United States Court of Appeals, Third Circuit.

Argued Feb. 2, 1982.

Decided March 1, 1982.

Myrna P. Field (argued), Joseph W. Marshall, III, Mid-Atlantic Legal Foundation, Philadelphia, Pa., Jack R. Heneks, Jr. (argued), Asst. Counsel to the Senate Democratic Floor (argued), Michael T. McCarthy, Chief Counsel to the Senate, Harrisburg, Pa., for appellants.

Carol E. Dinkins, Asst. Atty. Gen., Jacques B. Gelin, Kenneth A. Reich, Maria A. Iizuka (argued), Attys., Dept. of Justice, Washington, D. C., for the United States, appellee.

Jerome Balter, James S. Lanard (argued), Public Interest Law Center of Philadelphia, Philadelphia, Pa., for appellee Delaware Valley Citizens for Clean Air, et al.

Before GIBBONS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Two groups of Pennsylvania legislators appeal from the denial of their motions to intervene as defendants in an action seeking injunctive relief against violations of the Clean Air Act, 42 U.S.C. § 7401 et seq. We affirm.

The action in which the Pennsylvania legislators seek to intervene is a consolidation of two lawsuits filed by the Delaware Valley Citizens' Council for Clean Air (Delaware Valley) and the United States, in which they sought to compel defendants Commonwealth of Pennsylvania, Pennsylvania Department of Transportation and Pennsylvania Department of Environmental Resources (the Commonwealth defendants) to establish a program for the inspection and maintenance of automobile emissions systems (I/M program). After lengthy negotiations, the parties signed a consent decree, which the district court approved on August 29, 1978. In the consent decree, the Commonwealth agreed to seek

legislation establishing an I/M system operated on a franchise basis or, if such legislation were not enacted by a specified date, to promulgate regulations pursuant to which the Commonwealth would certify privately owned facilities to perform auto inspections.

The Pennsylvania legislature did not pass legislation establishing a franchise I/M system within the specified time period, and the Pennsylvania Department of Transportation promulgated the necessary regulations, which were published in the Pennsylvania Bulletin on December 22, 1979. 9 Pa. Bull. 4193 (1979).

On April 18, 1980 and June 9, 1980, nearly four years after the actions were filed and 20 and 21½ months after entry of the consent decree, a group of twenty state senators and a group of 17 state representatives moved to intervene under Fed.R.Civ.P. 24. These legislators sought intervention as of right or, in the alternative, permissive intervention, on the ground that the decree deprived them of their right as legislators to debate and vote on whether Pennsylvania should establish an I/M program. The district court denied the motions to intervene as untimely. *Delaware Valley Citizens' Council for Clean Air v. Commonwealth*, No. 76–2068, (E.D.Pa. March 25, 1981).

## I.

Appellants argue that they are entitled to intervene as of right under Fed.R.Civ.P. 24(a)(1) [1] because of a provision in the Clean Air Act providing that "any person may intervene as a matter of right" if the Administrator of the EPA or the State has commenced a civil action to require compliance with the Act. 42 U.S.C.

§ 7604(b)(1)(B). This ground for intervention as of right is without merit.

Section 7604(a) provides that any person may bring suit on his own behalf to challenge alleged violations of emission standards, or against the Administrator of the EPA if there is an alleged failure of the EPA to perform its non-discretionary duties. The indisputable Congressional purpose behind Section 7604(a) was to "both goad the responsible agencies to more vigorous enforcement of the anti-pollution standards and, if the agencies remained inert, to provide an alternate enforcement mechanism." *Baughman v. Bradford Coal Co.*, 592 F.2d 215, 218 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). *Accord, Friends of the Earth v. Carey*, 535 F.2d 165, 172–73 (2d Cir. 1976); *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 700 (D.C.Cir.1975). The legislative history of Section 304 indicates that "a citizen's suit can be brought only to enforce provisions of the act or the requirements that are established as a result of the operations of the act. In other words, a citizen suit is limited to the right to seek the enforcement of the provisions of the Act." Environmental Policy Division of the Congressional Research Service, A Legislative History of the Clean Air Amendments of 1970, Vol. 1 at 280 (1974) (remarks of Sen. Muskie). Although Congress clearly intended to widen citizen access to the courts as an enforcement mechanism, Congress did not provide for unlimited citizen access. Section 7604(b) establishes certain restrictions on citizen suits, including requiring prior notice to the EPA administrator, the State and the alleged violator, and limiting citizen participation to intervention where the Administrator has already filed an abatement action. Section 7604(b), the provision upon which the legislators rely,

---

1. Fed.R.Civ.P. 24(a) provides:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the sub-

ject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

does not establish a right to intervene independent from the other provisions in § 7604. *See, NRDC v. Train, supra,* 510 F.2d at 699–701.

The citizen suit provision of the Clean Air Act provides a right to intervene to enforce the law; it does not confer a right to intervene on behalf of an alleged violator or to seek to inhibit enforcement. Thus appellants' claim of a statutory right to intervene must be rejected.

As their second ground for intervention as of right, under Fed.R.Civ.P. 24(a)(2), appellants claim an interest in the transaction that will be impaired if the consent decree is allowed to stand. Whether appellants were entitled to intervene as of right depended upon their meeting three criteria:

> [F]irst, that they had sufficient interest in the matter, and that their interest would be affected by the disposition; second, that their interest was not adequately represented by the existing parties; and third, that their application was timely.

*Commonwealth of Pennsylvania v. Rizzo,* 530 F.2d 501, 504 (3d Cir.), *cert. denied,* 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). We need not for the moment address appellants' interest in the matter and the timeliness of their motions, since we conclude that any interests of appellants were adequately represented by the Commonwealth defendants.

Representation is generally considered adequate if no collusion is shown between the representative and an opposing party, if the representative does not represent an interest adverse to the proposed intervenor and if the representative has been diligent in prosecuting the litigation. *Olden v. Hagerstown Cash Register, Inc.,* 619 F.2d 271, 274–75 (3d Cir. 1980) (per curiam); *Martin v. Kalvar Corp.,* 411 F.2d

552, 553 (5th Cir. 1969). *See also, National Farm Lines v. ICC,* 564 F.2d 381 (10th Cir. 1977); *Nuesse v. Camp,* 385 F.2d 694 (D.C. Cir.1967); *Holmes v. Government of Virgin Islands,* 61 F.R.D. 3 (D.V.I.1973).

A party charged by law with representing the interests of the absent party will usually be deemed adequate to represent the absentee. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1909, at 528–29 (1972). By statute in Pennsylvania, the Attorney General is responsible for vindicating the sovereign interests of the Commonwealth. Pa.Stat. Ann. tit. 71, § 244, 294(b) (Purdon 1962) (repealed), *replaced with,* Commonwealth Attorneys Act of Oct. 15, 1980, Pa.Stat.Ann. tit. 71, § 732-201(a), 732–204(c) (Purdon Supp. 1963-1980). *See Commonwealth of Pennsylvania v. Porter,* 659 F.2d 306, 325 (3d Cir. 1981). The Attorney General has represented the Commonwealth in this litigation from the time the complaint was filed, through the negotiation and signing of the consent decree, and up to the present. When a state is a party to a suit involving a matter of sovereign interest, it is presumed to represent the interests of its citizens, *Environmental Defense Fund, Inc. v. Higginson,* 631 F.2d 738, 740 (D.C.Cir. 1979); *Commonwealth of Pennsylvania v. Rizzo, supra,* 530 F.2d at 505, and thus, to intervene in a suit in which the state is already a party, a subdivision of the state must overcome this presumption. Appellants here have alleged neither collusion between the Attorney General and any opposing party, nor any interest which is adverse to the interests of the Commonwealth in the litigation.[2]

Appellants' assertion that the fact that the Commonwealth agreed to implement an I/M program in a consent decree demonstrates that the Commonwealth is not ade-

---

**2.** The legislators cite a case establishing their standing to sue to "challenge executive actions when specific powers unique to their functions under the Constitution are diminished...." *Wilt v. Beal,* 26 Pa.Commw.Ct. 298, 363 A.2d

876, 881 (1976). The fact that these legislators may have standing is not at issue here. The district court did not premise its denial of the intervention motion on lack of standing.

quately representing their interests has been rejected by this court. *Commonwealth of Pennsylvania v. Rizzo, supra,* 530 F.2d at 505. As we noted in *Rizzo,*

> [A] consent decree may be simply "the inescapable legal consequence of application of fundamental law to [the] facts. That [intervenors] would have been less prone to agree to the facts and would have taken a different view of the applicable law does not mean that the [defendants] did not adequately represent their interests in the litigation." *United States v. Board of School Commissioners,* 466 F.2d 573, 575 (7th Cir. 1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

*Id.*

 The burden is on the proposed intervenor to show that his interests are not adequately represented. *Olden v. Hagerstown Cash Register, Inc.,* 619 F.2d 271 (3d Cir. 1980) (per curiam). In this case, the appellants have failed to overcome the presumption that their interests will be adequately represented by the Commonwealth of Pennsylvania. Although these legislators may have a direct interest in debating the merits of the I/M program and in making appropriations for expenditures, we can find no divergence between their position and the position of the Commonwealth on the primary issue involved in the litigation. Accordingly, we affirm the district court's denial of intervention as of right.

## II.

 Whether appellants claim intervention of right or by permission, Rule 24 requires that the application be timely, a determination to be made from all the circumstances. *NAACP v. New York,* 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–2603, 37 L.Ed.2d 648 (1973). A district court's denial of a motion to intervene because of untimeliness is reviewed for an abuse of discretion. *Halderman v. Pennhurst State School and Hospital,* 612 F.2d 131, 134 (3d Cir. 1979).

In *Commonwealth of Pennsylvania v. Rizzo, supra,* 530 F.2d at 506, this court articulated three factors which must be considered in evaluating the timeliness of an intervention motion:

(1) How far the proceedings have gone when the movant seeks to intervene, . . .

(2) prejudice which resultant delay might cause to other parties, . . . and

(3) the reason for the delay.

(citations omitted). The district court explicitly considered these three factors, and determined that the intervention motions were untimely.

 We begin from the presumption that a motion to intervene after entry of a decree should be denied except in extraordinary circumstances. *United States v. Blue Chip Stamp Co.,* 272 F.Supp. 432, 436 (C.D. Cal.1967), *aff'd sub nom. Thrifty Shoppers Scrip Co. v. United States,* 389 U.S. 580, 88 S.Ct. 693, 19 L.Ed.2d 781 (1968); *Halderman v. Pennhurst State School and Hospital, supra,* 612 F.2d at 134. Appellants argue, however, that their intervention motions were timely because they were filed within 45 days of the first modification of the consent decree on March 7, 1980, and because other modifications have been considered by the court since entry of the consent decree. Thus, appellants conclude, the proceedings were ongoing and the lapse of nearly four years since the complaints were filed, and 20 and 21½ months from entry of the consent decree, should not be dispositive. We reject this contention. While appellants may be correct that entry of a consent decree is not an absolute bar to intervention, *Bolden v. Pennsylvania State Police,* 578 F.2d 912, 925 n.7 (3d Cir. 1978) (Garth, J., concurring in part and dissenting in part), appellants have not demonstrated any extraordinary circumstances sufficient to overcome the presumption against intervention at this late date.

The proposed intervenors cannot reasonably claim that they were unaware of the

pendency of the lawsuit or entry of the consent decree. In fact, one of the intervenors introduced legislation to allow the Commonwealth to establish an I/M system, pursuant to the consent decree. H.B. 2823, 1978 Session (Sept. 25, 1978). See Attachments to Memorandum of Plaintiff United States in Opposition to Intervention Motion, App. 176. The fact that appellants knew or should have known of the pendency of this lawsuit at an earlier time and failed to act at that time to protect their interests weighs heavily against the timeliness of these motions. *See, NAACP v. New York, supra,* 413 U.S. at 366–67, 93 S.Ct. at 2603–2604; *Commonwealth of Pennsylvania v. Rizzo, supra,* 530 F.2d at 507. In addition, none of the circumstances or facts upon which appellants base their claim for relief have changed since the consent decree was entered. *Cf., Bolden v. Pennsylvania State Police, supra,* 578 F.2d at 927 n. 12 (Garth, J., concurring in part and dissenting in part) (change of facts can be considered in evaluating timeliness of intervention motion).

The district court concluded that intervention would cause substantial prejudice to the original parties in the action, since the proposed intervenors seek to vacate the consent decree. The court determined that if the motions to intervene were granted, the consent decree would probably have to be scrapped, and any implementation of the I/M program would be delayed even further. As a justification for the lateness of their intervention motions, the proposed intervenors basically argue that they should not be expected to have intervened earlier because "[t]he General Assembly of Pennsylvania is an extremely busy body." (Appellants' Brief at 27). In light of the wide publicity given to the case, the district court found that the legislators failed to provide a satisfactory explanation for the long delay.

We find no abuse of discretion in the district court's decision that the intervention motions were untimely.

III.

Appellants contend that their intervention is necessary to prevent the "clear constitutional infringement of their rights to appropriate funds." As state legislators, appellants argue, they have sole responsibility under the Pennsylvania Constitution for enacting all legislation in the Commonwealth.

We reject appellants' argument on the merits. The consent decree entered in this case required that the Commonwealth would establish an I/M program through implementing legislation or administrative regulation. Apparently appellants complain that the executive branch has encroached upon the legislative branch's responsibility to pass legislation and make appropriations. This conflict has not occurred, however. Both Houses of the Pennsylvania legislature passed House Bill 456, which sought to prohibit the use of Commonwealth funds for the I/M program. Governor Thornburgh subsequently vetoed HB 456, *see, Veto Message from Gov. Thornburgh to Pennsylvania House of Representatives* (July 10, 1981), but the legislature overrode that veto. In addition, we note that the Pennsylvania legislature did appropriate funds for an I/M program for fiscal years 1979–80, 1980–81 and 1981–82. Thus, contrary to appellants' assertion, the Pennsylvania legislature appears to have fully exercised its legislative prerogative. Accordingly, the denial by the district court of the motions to intervene will be affirmed.